UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LINDA GRANT,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Civil Action No. 09-6296 (SDW)(MCA)

**OPINION**

November 17, 2010

**WIGENTON**, District Judge.

Before the Court is Plaintiff Linda Grant's ("Grant" or "Plaintiff") appeal of the Commissioner of Social Security's (the "Commissioner") final decision that she was not disabled within the meaning of Title II, 42 U.S.C. § 423(d) or Title XVI, 42 U.S.C. § 1382c(a)(3)(A), of the Social Security Act (the "Act") from June 1, 2003, through October 14, 2008. The main issue in this case is whether Plaintiff has the residual functional capacity to perform her past relevant work based on her testimony and the medical evidence in the record.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated below, this Court affirms the Commissioner's decision.

**PROCEDURAL AND FACTUAL BACKGROUND**

    **i.   Procedural History**

Grant applied for Social Security Disability Insurance Benefits on January 27, 2006, and Supplemental Security Income Benefits on March 1, 2006. (Exs. 1D, 2D.) On

1

October 6, 2006, the Commissioner denied Plaintiff's claims on the grounds that she is not disabled under the Act. (Ex. 1B.) On November 27, 2006, Plaintiff requested reconsideration. (Ex. 2B.) Upon reconsideration, the Commissioner denied Plaintiff's claims again. (Exs. 3B, 4B.) Plaintiff then requested a hearing with an Administrative Law Judge (ALJ). (Ex. 6B.) On October 14, 2008, the ALJ issued a ruling against Plaintiff, finding that she is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (ALJ's Decision at 2.) Plaintiff's subsequent request for review was denied in an Appeals Council Action on November 12, 2009. (AC Denial at 1.)

### ii. Personal and Medical History

Plaintiff is a forty-one year old woman with three children. (Ex. 1D at 1; Tr. 8.) She concluded her formal education after the 9th grade. (Tr. 6-7; Pl.'s Br. 6.) Although Plaintiff claims her disability occurred on June 1, 2003, the most significant event leading to her claim for benefits took place on July 18, 2003, when she was admitted to the hospital for a week because she suffered from "seizures, convulsions, headaches[,] and alcohol withdrawal delirium." (Pl.'s Br. 2; Tr. 7; Ex. 1D at 1; Ex. 14E.) As a result, she "lost a lot of oxygen to the brain," which might have caused permanent damage. (Pl.'s Br. 3, 6.) According to Grant, she was dependent on alcohol for thirty-four years, (Pl.'s Br. 4), and her seizures, as well as her current ailments were induced by excessive alcohol consumption. (Tr. 9-10.) However, she claims the last time she drank was in 2003 around the time she experienced her debilitating seizure. (Pl.'s Br. 6.) She also testified that she has not had an epileptic seizure since 2003. (Tr. 16; Ex. 4F at 2.)[1]

---

[1] However, in a Seizure Questionnaire dated 12/26/2006, Plaintiff stated that she has seizures lasting about five minutes, every day. (Ex. 9E at 1, 2.)

2

Plaintiff's "final diagnosis was possible Weinecke-Korsakoff."[2] (ALJ's Decision at 5.) Currently, Plaintiff suffers from poor memory, hallucinations, and daily partial seizures. (Tr. 9-10.) Her scores on the Wechsler Memory Scale-III fell in the extremely low range of memory functioning.[3] (Ex. 5F at 3; Pl.'s Br. 4.) According to an evaluation conducted by Dr. Althea Lazzara ("Dr. Lazzara") for the DDDS, Plaintiff appears to "have severe impairment in short term auditory recall memory, short term visual memory[,] and [poor] ability to concentrate." (Pl.'s Br. 5.) Dr. Lazzara also asserts that Grant has "signs and symptoms of cognitive decline as a result of 34 years of alcohol dependence." (ALJ's Decision at 5; Ex. 4F.) Consequently, Plaintiff maintains that her boyfriend has to remind her to take her medication, (Ex. 5E at 1), and she has to "write everything down." (Ex. 7E at 2.)

Furthermore, Grant claims to suffer from auditory and visual hallucinations. (Pl.'s Br. 5; Ex. 2E at 3.) She asserts that a "big tall woman" appears daily and talks to her. (Tr. 10). Plaintiff describes one particular instance in which the woman told her to open the window "caus[ing] the air conditioner to fall." (Pl.'s Br. 6; Tr. 10.) She claims that sometimes the woman "brings different people." (Ex. 4F at 215.) She also maintains that she sees things like fire and objects falling. (Id.) Grant asserts that she has become

---

[2] Wernicke's encephalopothy and Korsakoff syndrome
> are different conditions that are both due to brain damage caused by a lack of vitamin B1. A lack of vitamin B1 is common in people with alcoholism. Korsakoff syndrome, or Korsakoff psychosis, tends to develop as Wernicke's symptoms go away. Wernicke's encephalopathy causes brain damage in lower parts of the brain called the thalamus and hypothalamus. Korsakoff psychosis results from damage to areas of the brain involved with memory.

Wernicke-Korsakoff Syndrome, MEDLINE PLUS, http://www.nlm.nih.gov/medlineplus/ency/article/000771.htm.

[3] Ben Montano, Claims Adjudicator for the Division of Disability Determination Services ("DDDS") referred Grant for a Wechsler Memory Scale evaluation. (Ex. 5F at 1.) Grant's results indicated that her "verbal and nonverbal memories are impaired. . . . [her] memory skills, in terms of concentration and attention span, are in the extremely low range. . . . [she] has severe impairment in short term auditory recall memory, short term visual memory[,] and her ability to concentrate." (Id. at 3.)

3

afraid of crowded places and loud noises.  Consequently, she only leaves the house to attend her doctor's appointments.  (Ex. 5E at 7.)

Plaintiff also alleges that she suffers from five-minute seizures two to three times daily, (Ex. 9E at 1; Ex. 14E), but Plaintiff's treating physician, Dr. Nagesh Krish ("Dr. Krish"), who she has been seeing from June 2005 to March 2006, (Pl.'s Br. 5; Ex. 8E at 3), maintains that Plaintiff's partial complex seizures are well controlled on Topamax.  (Ex. 7E at 5; Ex. 2F. at 6; Ex. 3F.)  However, Grant has failed to take her medications consistently.  (Exs. 11F, 13F.)  Her pharmacy records specifically indicate that Grant was not taking the medications prescribed to control her seizures and headaches.  (Id.)  On April 20, 2007, Dr. Kopel Burk, a non-examining state agency medical consultant, prepared a report which noted that Plaintiff "is not compliant with her medication.  And there is evidence that her seizures are [a]lcohol [w]ithdrawal related."  (Ex. 13F.)

Additionally, Grant stated on several occasions that she constantly experiences a "pounding" pain in the top left side of her head.  (Ex. 6E at 2, 5.)  She alleges that "[t]he pain gets so bad at times [that she] can't even get [her] head up from the pillow."  (Id. at 5.)  Plaintiff claims that she is often confused, her right arm shakes, she cannot hold a glass, write, follow instructions, or socialize with others.  (Ex. 5E at 2, 6.)  Nonetheless, she can dress herself, shower, feed herself, and complete some house chores.[4]  (Id. at 2.) Her other daily activities include: brushing her teeth, eating breakfast, feeding pigeons, listening to the news, watching television, and taking her medication.  (Id. at 1.)  Plaintiff is able to complete the above tasks without assistance; however, she has expressed some difficulty in zipping her clothing, tying her hair back, and feeding herself with her right

---

[4] Later, in that same report, Plaintiff asserts that she is unable to do any household chores.  (Ex. 5E at 3.)

hand. (Id.)  Grant also claims that she is unable to care for her one year old son.  (Pl.'s Br. 7.)

Dr. Krish, prescribed Lametel, and Seroquel for Plaintiff's hallucinations, and Topamax for her hand shaking.[5]  (Ex. 7E at 6.)  As of March 30, 2006, Dr. Krish did not know if Plaintiff was "actively consuming alcohol."  (Ex. 2F at 6.)  On September 29, 2006, Dr. Krish signed a General Medical Report, in which he checked off a box indicating that he could not provide, based on his medical findings, a medical opinion regarding Grant's "ability to do work related activities."  (Ex. 14F at 4.)  Subsequently, on October 3, 2006, Dr. Krish opined to Dr. Benito Tan ("Dr. Tan"), another non-examining state agency medical consultant, that Grant "can do simple work."  (Ex. 6F.) The next day, Dr. Tan conducted a Mental Residual Functional Capacity Assessment and found, after giving "controlling weight to Dr. Krish's opinion," (ALJ's Decision at 6), that Plaintiff had the ability to "remember locations and work-like procedures," "understand, remember, and carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "make simple work related decisions," and "interact appropriately with the general public." (Ex. 8F at 1-2.)  Dr. Tan also concluded that Grant's ability to "understand and remember detailed instructions," and "work in coordination with or proximity to others without being distracted by them" was only "moderately limited."  (Id. at 1.)

Furthermore, in June 2006, Dr. Stuart From ("Dr. From"), another non-examining state agency medical consultant, opined, after speaking with Dr. Krish, that Plaintiff "had no exertional limitations."  Additionally, although Plaintiff could not "climb ladders,

---

[5] Plaintiff's other medications are Trazadone, Risperdal, Temazapam, Oxcarbazepine, Vitaplex, and Imitrex. (Pl.'s Br. 3-4; Ex. 7E at 6; Ex. 8E at 4; Ex. 9E at 1; Ex. 5F at 2; Ex. 15E.)

5

ropes, and scaffolds," Dr. From reported that she could "perform all other postural functions frequently." (ALJ's Decision at 5; Exs. 2F, 3F.) Yet, Plaintiff believes her physical ailments have rendered her incapable of working. (See generally Pl.'s Br.)

On May 15, 2007, nearly seven months after Dr. Krish's assertion that Grant "can do simple work," Dr. Krish wrote that Plaintiff was "[n]ot [e]mployable." (Ex. 6F; Ex. 14F at 2.) At this time, there had been no change in Plaintiff's condition and Dr. Krish did not give an explanation as to why he altered his opinion. One month later, on June 19, 2007, Dr. Krish wrote: Grant is "physically[,] as well as mentally handicapped at present until we control her problems fully. She could not . . . handle her baby at this time." (Id. at 1.)

### iii. Employment History

From 2000 to 2003, Plaintiff worked from her home for a sheet manufacturer. (Pl.'s Br. 7.) Her duties included placing pieces of sheets together. (Id.) In her position as a sheet sorter/assembler, Plaintiff would sit or stand for eight hours; walk for one hour; stoop, handle, grab or grasp big objects for four hours; and crouch for two hours. (Ex. 7E at 3.) About a year after her seizure, Grant worked for one week at Children's World, a children's clothing store. She states she "was dismissed from work. . . . [because] [] [she] could no longer perform [] [her] job duties." (Exs. 1E at 2; 7E at 2.)[6] Nearly three years after Plaintiff's dismissal, the DDDS reported on April 3, 2007, that Grant was capable of performing other jobs such as a "silver wrapper," "stringer" or "sticker." (Ex. 12F at 2.)

---

[6] There is a discrepancy in the dates Plaintiff worked after her seizure. One document reports that she worked in October 2004 and another document reports that she worked in December 2004. (See Ex. 1E at 2-3; Ex. 7E at 2.)

6

## STANDARD OF REVIEW

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner. Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). On the other hand, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. Hartranft v. Apfel, 181 F.3d 358, 369 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla;' it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bailey v. Comm'r of Soc. Sec., 354 Fed. Appx. 613, 616 (3d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, 2009 U.S. Dist. LEXIS 32110, at *2 (M.D.Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because we would have reached a different decision." Cruz v. Comm'r of Soc. Sec., 244 Fed. Appx. 475, 479 (3d Cir. 2007) (citing Hartranft, 181 F.3d at 360). However, "where there is conflicting evidence, the ALJ must explain which evidence he[/she] accepts and rejects, and the reasons for that

determination." Cruz, 244 Fed. Appx. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).

Upon consideration of the evidence, this Court affirms the ALJ's decision that Grant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 because it is supported by substantial evidence. Plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), and she also has the ability to perform past relevant work as a sheet sorter/assembler. Therefore, Grant was not disabled from June 1, 2003, through October 14, 2008 (the date of the ALJ's initial decision).

## DISCUSSION

An individual will be considered disabled under the Act if he/she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his[/her] previous work but [unable] considering his[/her] age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy. . . ." § 423(d)(2)(A). Subjective complaints of pain, alone, cannot establish disability. § 423(d)(5)(A). Instead, a claimant must show that the "medical signs and findings" related to her ailment have been "established by medically accepted clinical and laboratory diagnostic techniques, which show the existence of a medical impairment that results from

anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." § 423(d)(5)(A).

The Social Security Administration (the "SSA") utilizes a five-step sequential evaluation process to determine whether an applicant is entitled to Social Security benefits. Cruz, 244 Fed. Appx. at 480 (citing 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v)). "A negative conclusion at steps one, two, four or five precludes a finding of disability." Cruz, 244 Fed. Appx. at 480. However, "[a]n affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability." Id. (quoting 20 C.F.R. §§ 404.1520 (a)(4)(i)- (v)) (internal quotations omitted).

> The United States Supreme Court describes the evaluation process as follows:
>
>> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990); see also 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The burden of persuasion lies with the claimant in the first four steps. Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 763 (3d Cir. 2009). However, if the claimant is able to show that the impairment prevents him/her from performing his/her past work

9

the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy." Id. (citing Kangas v. Bowen, 823 F.2d 775,777 (3d Cir. 1987)).

This Court's analysis of Plaintiff's claim begins with step four, whether Plaintiff has the residual functional capacity to complete her past relevant work, because the record and the parties' briefs show that steps one through three are not at issue. "Residual capacity is defined as 'what a [claimant] can still do despite his[/her] limitations.'" Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002) (quoting 20 C.F.R. S 416.945(a)). The ALJ must seriously consider the claimants subjective complaints and make "specific findings of fact, including credibility, as to [the claimant's] residual functional capacity." Burns, 312 F.3d at 129. The ALJ's decision follows a two-step process:

> (1) [I]t must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques— that could reasonably be expected to produce the claimant's pain or other symptoms.
> (2) [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.

Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485 (July 2, 1996). While Plaintiff may have a discernable medical condition that could reasonably cause the pain she experiences, the ALJ may determine that "the extent of h[er] pain was exaggerated, and that [] [Plaintiff] could perform light duty work despite h[er] complaints of incapacitating pain." Hartranft, 181 F.3d at 362.

The record and Grant's testimony offer sufficient evidence of her capacity to perform her previous job as a sheet sorter. Plaintiff's prior work involved two simple steps, which required lifting ten pounds or less at a time. (Def.'s Br. 8.) Plaintiff claimed that her job function required her to sit and stand for eight hours; walk for one hour; stoop, handle, grab or grasp big objects for four hours; and crouch for two hours. (Ex. 7E at 3.) None of the evidence Plaintiff has provided, including her treating physician's reports, indicates that Plaintiff lacks the residual functional capacity to perform the job functions listed above. Plaintiff's ability to perform daily activities such as: brushing her teeth, feeding herself, showering, feeding pigeons, listening to the news, watching television, and taking her medication shows some level of concentration and coordination sufficient to perform her past work. (Ex. 5E at 1.)

Furthermore, Dr. Tan's findings show that Plaintiff can perform her past relevant work. According to Dr. Tan, Plaintiff has the ability to remember locations and work-like procedures," "understand, remember, and carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "make simple work related decisions," and "interact appropriately with the general public." (Ex. 8F at 1-2.) Moreover, Dr. From opined that although Plaintiff cannot "climb ladders, ropes, and scaffolds," she can "perform all other postural functions frequently." (ALJ's Decision at 5; Exs.2F, 3F.) The DDDS also reported on April 3, 2007, that Grant was capable of performing other jobs such as a "silver wrapper," "stringer" or "sticker." (Ex. 12F at 2.) Disability is predicated on whether a claimant's impairment is so severe that she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work

11

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Snee v. Sec'y of Health & Human Servs., 660 F. Supp. 736, 740 (D.N.J. 1987). Here, because the record shows that Plaintiff is able to complete her past work, she is not disabled.

Nonetheless, Plaintiff argues that she is disabled because Dr. Lazzara's Psychiatric Consultative Examination Report, which was conducted on August 25, 2006, states that

> Grant's scores fall in the extremely low range of memory functioning. This indicates that [] Grant's verbal and non verbal memories are impaired. This also suggests that [] Grant's memory skills, in terms of concentration and attention span, are in the extremely low range. It appears [] Grant has severe impairment in short term auditory recall memory, short term visual memory and her ability to concentrate. It appears [] Grant has signs and symptoms of cognitive decline as a result of 34 years of alcohol dependence.

(Ex. 5F at 3-4.) In spite of Grant's poor memory skills, Dr. Tan found that Plaintiff has the ability to remember locations and work-like procedures," "understand, remember, and carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "make simple work related decisions," and "interact appropriately with the general public." (Ex. 8F at 1-2.) Additionally, her limitations do not affect her ability to complete the tasks she performed in her past employment. Also, as stated earlier she has the capacity to perform other jobs available in the national economy such as a "silver wrapper," "stringer," or "sticker," even with her alleged poor memory. (Ex. 12F.) Accordingly, Plaintiff is not disabled because she has the "residual functional capacity" to engage in her past relevant work, as well as other substantial gainful work which exists in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(iv).

Nevertheless, Plaintiff contests the weight the ALJ gives to Dr. Krish's statement that she is capable of performing "simple work." Instead, she believes the Court should give Dr. Krish's note, which states that Ms. Grant is "unemployable," controlling weight. (Pl.'s Br. 12.) Plaintiff also purports that because this is a case where disability cannot be determined on medical evidence alone, her treating physician's opinion should be given more weight.[7] (Pl.'s Br. 9.) This argument has no merit. The ALJ is not bound to concluding that Grant was unable to work simply because Dr. Krish opined as such. Furthermore, the SSA's determination of whether a claimant meets the statutory definition of disability does not need to be based on a medical source. 20 C.F.R. § 404.1527(e)(1).

This Court's duty is to seriously consider the claimant's complaints and make specific findings of fact by "scrutiniz[ing] the record as a whole to determine whether the conclusions reached are rational." Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted). In cases where contradictory medical evidence exists, an ALJ must consider all of the evidence "and make choices between conflicting medical evidence." Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992). "An ALJ may [also] reject a treating physician's opinion . . . [or] may afford a treating physician's opinion more or

---

[7] Plaintiff argues that four elements should be used to determine whether the Commissioner has substantial evidence to support his decision. The elements include: 1) Objective medical facts; 2) Diagnosis or medical opinion based on those facts; 3) Subjective evidence obtained or disability testified by the claimant; and 4) The claimant's age, education and work experience. (Pl.'s Br. 9); Curtis v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). According to Plaintiff, the second element should be given more weight than the other three elements, but she erroneously uses support from Cotter v. Harris, 642 F. 2d 700, 704 (3rd Cir. 1981) and Alvarado v. Califano, 605 F.2d 34, 35 (2nd Cir. 1979), to make such a blanket assertion. Instead these cases support the notion that a treating physician's medical opinion should be afforded substantial weight and is binding to the ALJ where no contradictory evidence has been offered, Alvarado, 605 F. 2d at 35, and if contradictory medical evidence is reported by doctors other than the claimant's treating physician, the ALJ must offer a reason for rejecting "obviously probative and significant but conflicting findings." Cotter, 642 F. 2d at 704.

less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1984)).

The administrative record taken as a whole offers support for dismissing Dr. Krish's statement that Grant is "unemployable." In fact, the record proves that Grant could have but failed to control her symptoms. In the Physical Residual Functional Capacity Assessment dated June 12, 2006, Dr. Krish, diagnosed Grant with "partial complex seizures which are well-controlled on Topamax." (Ex. 2F at 6.) She was also prescribed a myriad of other medications to control her varied symptoms. (See Ex. 7E at 6; Ex. 8E at 4; Ex. 9E at 1; Ex. 5F at 2; Ex. 15E.) However, the record indicates that Plaintiff does not fill her prescriptions regularly. (Ex. 11F.) Thus, Dr. Burk's report concludes that Plaintiff was either "noncompliant with medication or [was] drinking." (Ex. 11F.) Additionally, the record does not suggest that Plaintiff's condition changed from the time Dr. Krish initially opined that she could complete simple work to the time he concluded that Plaintiff was unemployable. Dr. Krish did not provide a supporting explanation for the change in opinion. Therefore, the ALJ did not err in according the subsequent opinion more deference. Plummer v. Apfel, 186 F.3d at 429. Even further, the ALJ had the authority to reject Grant's complaints if he found them not to be credible. See Coccarelli-Yacobozzi v. Astrue, 2010 Dist. LEXIS 10964, at *42 (W.D. Pa. Feb. 9, 2010) (quoting Powell v. Barnhart, 437 F. Supp. 2d 340, 342 (E.D. Pa. 2006)).

The results of Plaintiff's psychiatric evaluation as well as Dr. Tan's assessment also support a finding that Plaintiff is not disabled. Grant's Psychiatric Evaluation Report, completed on August 24, 2006, states that she was well-groomed, gave

appropriate eye contact, and expressed coherent, as well as goal directed thoughts. (Ex. 4F at 2.) In addition, Plaintiff did not demonstrate signs of confusion, but was able to give verbal descriptions of background information, count backward and forward, correctly state the month, day of the week and year. (Id.) "Her speech was average in rate and volume." (Id.) Dr. Tan also found that Grant's mental residual functional capacity showed moderate limitations, at most, in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Ex. 8F.) He also reported that Grant could "adapt to a low demand work setting." (Id.) These assessments coupled with Plaintiff's ability to complete daily activities such as showering, doing her hair, feeding herself, and feeding pigeons shows that she will be able to perform the functions of her previous employment. While Grant's ailments might render her incapable of caring for a one-year old child, she possesses the capacity necessary to complete her past work or other work available in the national economy.

## **CONCLUSION**

For the reasons stated above, this Court AFFIRMS the ALJ's decision.

**SO ORDERED.**

s/ Susan D. Wigenton
Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.